150 So. 835

## STATE v. UNITED GAS PUBLIC SERVICE CO. et al.

No. 32605.

Nov. 7, 1933.

Rehearing Denied Nov. 13, 1933.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, Dart & Dart, of New Orleans, Shotwell & Brown, Oliver & Digby, and McHenry, Montgomery, Lamkin & Lamkin, all of Monroe, Tobin R. Hodge, of Rayville, Madison, Madison & Fuller, of Monroe, Milling, Godchaux, Saal & Milling, of New Orleans, Wilkinson, Lewis & Wilkinson, of Shreveport, and Sholars & Gunby, of Monroe, for appellants.

Gaston L. Porterie, Atty. Gen., and D. J. Anders, Dist. Atty., of Winnsboro, for the State.

ODOM, Justice.

Section 6 of Act No. 11, Ex. Sess. of 1915, which act is the anti-trust law of this state,

makes it the duty of the Attorney General or the district attorney acting under him to institute proceedings to prevent and restrain violations of the act.

Act No. 12 of the same session provides that, when an action or suit for the enforcement of the anti-trust laws is contemplated, the Attorney General or district attorney, acting under him, if it be deemed advisable, may institute special proceedings for an investigation to ascertain if in fact the anti-trust laws have been violated, and, if so, to obtain information on which to found such suit or action. To this end it is provided that an application may be made "to any court of competent jurisdiction * * * for an order directing any such persons, as the Attorney General or District Attorney may require, to appear before any judge, clerk of court or notary public designated in said order and answer such relevant and material questions as may be put to them concerning any illegal contract, arrangement, agreement or combination in violation of the laws of this State against pools, trusts, agreements, combinations and conspiracies in restraint of trade," etc. (Section 1.)

Section 2 of Act No. 12 stipulates that such order may provide also that such persons as may be summoned shall "produce on such examination all books, papers and documents in his possession or under his control, relating to the subject of such examination."

This is a proceeding or "special procedure" brought under these acts. It was brought in the district court of the parish of Richland, where, it is alleged, there is a vast gas field, in which the state and all its inhabitants, especially those of that parish, are vitally in-

terested; that said gas field is now, and has been for some time, under process of development, and that natural gas is being extracted from the ground, sold and distributed by certain named individuals and corporations, who own leases obtained from the landowners; that said lessees or those who hold under them are also engaged in extracting gasoline from the natural gas and are manufacturing carbon black from the natural gas.

It is alleged that reports have been made to the Attorney General and the district attorney that those who own these leases, and who are operating in the Richland field, have been, and are now, violating the anti-trust laws of the state; that they have entered into conspiracies and secret pools, combinations, trusts, contracts, and agreements to regulate and control the production, price, and distribution of natural gas, as well as the manufacture and price of its products.

It is further alleged that the Attorney General and the district attorney are not in possession of sufficient specific information on which to base actions and proceedings to enforce the anti-trust laws, and for that reason they invoke the provisions of Act No. 12, Ex. Sess. of 1915, in order to obtain the desired information.

As stated, this proceeding was brought in the district court for the parish of Richland where the gas field is located. But, according to the allegations, not one of the corporations alleged to have violated the anti-trust laws of the state is domiciled within the parish of Richland, or has an office or place of business therein or a person on whom citation and service of process may be made. The allegations show that thirteen of the de-

fendant corporations were organized under the laws of other states and have their domiciles without this state. Each of them, however, has an office within the state where it transacts its business, seven in Shreveport, Caddo parish, three in Monroe, Ouachita parish, two in New Orleans, and one in Zachary, parish of East Baton Rouge. One is a Louisiana corporation having its domicile and place of business in Ouachita parish. Each of these corporations has designated a person on whom service of process may be made and the place where he may be found in this state, but none of them resides in Richland parish. W. C. Feazel, the individual named as one of the conspirators, resides at Monroe, in Ouachita parish, where he has an office and transacts his business. Rhymes & England is named as a partnership which also entered into the alleged conspiracies, and it is set out that the partnership is composed of R. R. Rhymes and A. S. England, both of whom reside in Richland parish.

Feazel, the individual, and each of the corporations named, as defendants, filed exceptions to the jurisdiction of the court ratione personæ, which exceptions were overruled by the trial court. The defendants appealed.

■ The question, and the only one before us, is whether the district court of the parish of Richland has jurisdiction to grant the order for the special investigation sought to be made by the Attorney General and the district attorney.

The question is answered by the plain and unambiguous language of the statutes. Act No. 12, which authorizes this kind of proceeding or "special procedure," does not in terms fix the venue of such actions, but merely provides that the application for the order shall be made before a "court of competent jurisdiction," meaning a court of competent territorial jurisdiction.

But Act No. 11, Ex. Sess. of 1915, in aid of which Act No. 12 was adopted, does provide, in section 7:

"That any suit, action or *proceeding* under this Act in the name of the State against a corporation, shall be brought in the parish where it is domiciled, or if it has no domicile in this State, then in any parish in which it may be found or transacts business." (Italics ours.)

Again in section 18 of Act No. 11 it is provided: "That all suits for the enforcement of this Act shall be instituted in the District Courts of competent jurisdiction."

Section 7 of Act No. 11 is mandatory that "any suit, action or proceeding under this Act * * * shall be brought in the parish where it [the corporation] is domiciled," etc. This part of the act "establishes a rule" that proceedings brought under it must be brought at the domicile of the corporations, or, if they have none in this state, "then in any parish in which it may be found or transacts business."

Article 90 of the Code of Practice reads as follows:

"To determine on his competency, as relates to the *place* where the action is brought, we must be governed by the rule which provides that a judge shall not exercise any jurisdiction beyond the limits of the territory assigned to him."

The several district judges of this state are prohibited from exercising any jurisdiction

beyond the territory assigned to them, and it is not disputed that the district judge before whom this proceeding was brought does not have assigned to him the territory in which these corporations are domiciled or have places of business.

The Attorney General and the district attorney, in brief and in oral argument, concede that, if the proceeding brought be considered "one civil in character," the court has no jurisdiction. But they say on page 10 of their brief: "Our contention here is that we are getting ready for a criminal prosecution," and on page 23: "We contend that our bill of discovery is for the filing of a case criminal in character."

Proceeding upon the hypothesis that, if the defendants violated the penal provisions of the Anti-Trust Law, they committed the crimes in the parish of Richland, where the gas field is located, the Attorney General and the district attorney contend that, inasmuch as they are seeking information on which to found a criminal prosecution, and inasmuch as all criminal prosecutions must take place in the parish where the criminal act or offense is committed (Const. 1921, art. 1, § 9, Code of Criminal Procedure, art. 13), this investigation or "fishing expedition" should be begun in that parish.

We find no merit in this contention. This proceeding is merely for the purpose of making an investigation to ascertain if the anti-trust laws have been violated. In a strict, legal sense, it is not an "action" or a "suit," either criminal or civil, brought against defendants. But it is a "proceeding" brought under the anti-trust laws, and section 7 of Act No. 11 provides that all such proceedings shall be brought at the domicile of the corporations. So it matters not whether the investigation is made for the purpose of gaining information on which to found a criminal prosecution or a civil suit or action for ouster; in either event, the "proceeding" must be brought before a competent judge, that is, one within whose territorial limits the defendants are domiciled or have established places of business.

■ R. R. Rhymes and A. S. England are both residents of Richland parish, where the proceedings were brought. They did not except to the jurisdiction of the court, and it is argued by the Attorney General and the district attorney that, inasmuch as the court had jurisdiction over the alleged partnership of Rhymes & England, it could bring all the other defendants in. In support of the contention, they cite Standard Oil Co. of New Jersey v. United States, 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734, where it was held, to quote paragraph 1 of the syllabus, that: "The presence of one of the defendants in the Federal district in which suit by the United States under the anti-trust act * * * is brought to restrain violations of that act, gives the circuit court jurisdiction, and justifies it in making an order under § 5 [15 USCA § 5] for the service of process upon all the other defendants, wherever they may be found."

The ruling in the cited case has no application here, for the reason that Acts No. 11 and No. 12 of 1915 (Ex. Sess.) contain no provision similar to section 5 of the Federal Anti-Trust Law (15 USCA § 5).

■ Rhymes and England filed exceptions of no cause of action, which were tried. The

testimony showed that they were not then, and never had been, partners; that they owned no property in common; that they are not engaged together or separately in the production of natural gas; that neither owns any gas wells, pipe lines, or manufacturing plant in Richland parish. They do, however, receive royalties from gas wells on their respective lands.

They testified that they did "pool" their interest in this respect, that each owned lands in the territory, and that, prior to the discovery of gas, they made a joint lease, which was later developed, covering all the lands owned by each, with the understanding that, if gas was discovered on the property of either, they should share in the royalties in proportion to their respective acreages.

In view of the testimony adduced, these defendants necessarily drop out of the case.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that the exceptions to the jurisdiction filed by defendants be sustained, and the proceeding instituted by the Attorney General and the district attorney be dismissed.